**John CARVER, Al Sampson, Herbert Barrus, Bill McClung, Leonard F. Lust, Donald J. Meyers, Plaintiffs–Appellants,**

v.

**WESTINGHOUSE HANFORD COMPANY, a Corporation, Hanford Operations and Engineering Pension Plan, Defendants–Appellees.**

No. 91–35002.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 11, 1991.

Decided Dec. 17, 1991.

Alex J. Skalbania, Critchlow, Williams & Schuster, Richland, Wash., for plaintiffs-appellants.

Marvin L. Gray, Jr., Davis, Wright & Tremaine, Seattle, Wash., for defendants-appellees.

Before D.W. NELSON, NOONAN, and T.G. NELSON, Circuit Judges.

T.G. NELSON, Circuit Judge:

John Carver and his fellow employees appeal the district court's grant of summary judgment in favor of Westinghouse Hanford Company (WHC) in their action under the Employees Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461. The appellants allege that WHC's Operating and Engineering Pension Plan (HOEP Plan) improperly failed to recognize prior service for other contractors at the Hanford Nuclear Reservation (HNR). We affirm the summary judgment.

## FACTS AND PROCEEDINGS BELOW

The parties have stipulated to the following facts. In 1986 the Department of Energy (DOE) decided to consolidate the primary responsibility for daily operation of the HNR in the hands of one private contractor. WHC was selected and the consolidation was to be completed by June 29, 1987. Prior to consolidation each contractor operated its own pension plan for its own employees. Since most of these employees would then work under the consolidated contractor, it was decided prior to consolidation that a reservation pension plan should be adopted into which the assets of the previous pension plans would be merged.

WHC's "final pay" plan had a graduated vesting schedule. The monthly retirement benefit would generally be 1.6% of average monthly compensation over the highest five compensation years, multiplied by the number of years of employment that were recognized under the plan. Employees were 60% vested after five years of service and 100% vested after ten years.

WHC recognized that there would be a question as to how employees would receive recognition under the new pension plan for the years of service previously accumulated at HNR under all of the various contractors. Subject to DOE approval, WHC initially intended that the new plan would recognize all of an employee's prior years of service at HNR after 1965. The DOE, however, determined that only the employees' years of service that were recognized by his or her employer for pension purposes immediately prior to consolidation should be recognized under the new pension plan.

As a result of extended negotiations between the DOE and WHC, the final pension plan was not adopted until December, 1987. It ultimately received DOE approval in March, 1989, nearly two years after consolidation of operations into WHC had been completed. In the interim, WHC attempted to keep its employees informed as to their rights under the new pension plan.

The plaintiffs in this case were employees of predecessor DOE contractors now employed at WHC with no material changes in their job duties or salaries. At the time of consolidation, June, 1987, WHC provided documents to employees explaining the ramification of the consolidation to their employment status and benefits. Included were papers containing information regarding the new proposed pension plan that was to take effect at the time of consolidation. The documents consisted of: (1) a questionnaire regarding linking of prior service; (2) three issues of a regularly published newsletter designed to keep employees informed about the consolidation; and (3) a booklet summarizing the highlights of the new consolidated pension plan. These documents were identified as "At-

tachment C" to the Stipulation and were the only documents provided to the employees between June and December, 1987, when WHC formally adopted the pension plan.

After accepting employment with WHC, the plaintiffs learned that the consolidated company would not calculate their retirement benefits based on the entirety of periods of service with prior contractors. WHC ultimately adopted the DOE position and would not give credit under its pension plan for prior years of service at Hanford or elsewhere unless such service would have been recognized by the pension plan in which the employee participated immediately before consolidation. On cross motions for summary judgment, the district court decided in favor of WHC. This appeal resulted. We affirm.

## STANDARD OF REVIEW

■ A grant of summary judgment is reviewed *de novo*. *Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1421 (9th Cir. 1989). The appellate court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Tzung v. State Farm Fire & Casualty Co.*, 873 F.2d 1338, 1339–40 (9th Cir.1989).

## DISCUSSION

### I

■ ERISA is a remedial statute which Congress enacted to protect employee pension benefit rights and to protect employers from conflicting and inconsistent state and local regulations of pension benefit plans. *Shaw v. Delta Air Lines*, 463 U.S. 85, 90–91, 103 S.Ct. 2890, 2896–97, 77 L.Ed.2d 490 (1983). A pension benefit plan may be created even without a formal intentional plan adoption if "from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir.1982) (en banc).

In this case, one of the basic contentions of the appellants is that the informal documents described as Attachment C, the questionnaires, the newsletter, and the preliminary summary booklet, established a pension plan. They argue further that the formal plan eventually adopted in December, 1987, reduced the benefits established by the Attachment C documents. As an amendment reducing benefits, their argument goes, the formal plan is in violation of 29 U.S.C. § 1054(g) and § 1082(c)(8).[1]

The district court found this argument unconvincing. First, it found the cases cited by the appellants inapposite. *See Donovan, Scott v. Gulf Oil*, 754 F.2d 1499 (9th Cir.1985); *Blau v. Del Monte Corp.*, 748 F.2d 1348 (9th Cir.1985). Each of these cases discussed the variety of ways a de facto pension plan could be created through surrounding circumstances. In *Scott*, for example, the court noted that the existence of a written instrument is not necessarily a prerequisite to ERISA coverage (citing *Donovan*). Informal actions could create coverage if the surrounding circumstances would indicate to a reasonable man that benefits exist. *Donovan* at 1373. The district court found the appellants' reliance on these cases misplaced because "the defendants have never denied the existence of a pension plan nor have they contended that ERISA does not apply." Excerpts of Record at 28. ("E.R.")

■ Although WHC never denied the existence of a pension plan, it does deny that the Attachment C documents were to be the binding informal plan as of June, 1987.

---

1. 29 U.S.C. § 1054(g) provides "the accrued benefit of a participant under a plan may not be decreased by an amendment of the plan, other than an amendment described in ... 29 U.S.C. § 1082(c)(8)."

Section 1082(c)(8) provides further that no amendment described in this paragraph which reduces the accrued benefits of any participant shall take effect unless the plan administrator files a notice with the Secretary ... [of Labor] ... notifying him of such amendment and the Secretary has approved such amendment or, within ninety (90) days after the date on which such notice was filed, has failed to disapprove such amendment. ...

The purpose of the documents was to apprise anxious employees of what they might expect once the transition from several employers to WHC was completed. WHC had not completed its negotiations with DOE, and consequently, had not adopted a plan.

*Donovan* explains that intent to create a plan is not enough:

> A decision to extend benefits is not the establishment of a plan or program. Acts or events that record, exemplify or implement the decision will be direct or circumstantial evidence that the decision has become reality ... assuring employees that a plan or program exists [for example]—but it is the reality of a plan, fund or program and not the decision to extend certain benefits that is determinative.

*Id.* at 1373.

WHC should have explained in its communications that the plan was not formalized and was subject to DOE approval. Failure to do so, however, did not elevate the newsletters and the preliminary summary booklet to the level of an informal plan in June, 1987. The plan simply was not a reality until that December when it was formally adopted.

■ Moreover, the documents were consistent with the plan formalized in December as well as the final summary booklet and, therefore, did not violate § 1054(g). While each of the documents discusses the accrual of prior service, the most recognition the documents provide of prior service was that employees would take with them service recognized by their immediate predecessor employers and that prior service might be restored depending on the specific circumstances of each employee. The June, 1987, summary booklet, which makes only one reference to this issue, states:

> If you become a participant of the plan on June 29, 1987, you will receive credit for prior service in accordance with your prior *plan's* provision; however, no credit will be given for service before January 1, 1965.

E.R. 66C.

The district court noted:

This paragraph is the only reference to restoration of prior service contained in the entire document. After reading the booklet several times, it is obvious that the use of the singular "plan's" is made in reference to only the employee's plan immediately prior to consolidation, leading this court to conclude that the booklet states the position taken by the defendants and the position that is embodied in the HOEPP formal plan document. (Attachment E) adopted in December, 1987, that employees are not entitled to have their prior years of service with other Hanford contractors recognized for the purpose of calculating their pension benefits unless those prior years of service were recognized for that purpose by the employer for whom the employee in question was working immediately prior to consolidation.

E.R. 35–6.

If the summary booklet had varied from the formal plan, WHC may not have been able to enforce it. This is true even though the booklet contained a disclaimer. *See Bower v. Bunker Hill Co.*, 725 F.2d 1221, 1224 (9th Cir.1984). We need not reach this issue, however, because we agree with the district court that both the preliminary summary booklet issued in June, 1987, and its final version which was identical on this issue and disseminated in January, 1988, were consistent with the formal plan.

## II

■ The appellants allege further that the plan administrator should be equitably estopped from interpreting the plan in a manner which does not give them credit for the time they believe they deserve. The appellants' argument is fatally flawed because the critical element of knowing false representation is missing from their argument. We have previously held:

> In this circuit, estoppel is available against a nongovernmental party who has made a knowing false representation, or concealment of material facts, to a party ignorant of the true facts, with the intention that the other party should

rely on the representation and the other party actually and detrimentally does rely.

*Dockray v. Phelps Dodge Corp.*, 801 F.2d 1149, 1155 (9th Cir.1986). The parties stipulated that "plaintiffs were not deliberately misled by WHC concerning their pension benefits. Any inaccurate or misleading information which was provided to them by WHC was the result of uncertainty or confusion, and was provided in good faith." Stipulation at 12.

■ At oral argument, however, counsel for the appellants conceded the stipulation but nonetheless argued that WHC "concealed material facts." Apparently, he is finding a critical difference between a knowing false representation and a concealment. Counsel submitted two details that WHC allegedly concealed. First, he argued that they hid the fact that WHC was still negotiating with the DOE over the benefit plan. Secondly, he argued they concealed that the DOE "was opposed to a linking of service." We note that such a distinction between concealment and a knowing false representation might make for an interesting discussion. We decline the temptation, however, because counsel has raised this issue for the first time on appeal. Barring exceptional circumstances that do not exist here, we will not consider issues that were not first argued to the district court. *Bolker v. C.I.R.*, 760 F.2d 1039, 1042 (9th Cir.1985). Consequently, we hold that lacking any false representation or concealment of material facts, the appellants cannot prevail on this theory of law.

### III

■ Lastly, the appellants assert that 29 U.S.C. § 1060(b) requires WHC to tack the years of service accrued for the predecessor employers onto the pension plan of WHC. A literal reading of the statute defeats their argument. The statute provides that:

For purposes of this part and part 3—
(1) in any case in which the employer maintains a plan of a predecessor employer, service for such predecessor shall be treated as service for the employer, and

(2) in any case in which the employer maintains a plan which is not the plan maintained by a predecessor employer, service for such predecessor shall, to the extent provided in regulations prescribed by the Secretary of the Treasury, be treated as service for the employer.

29 U.S.C. § 1060(b).

The district court interpreted this provision literally, noting that at the outset, the section signifies on its face that it pertains only to parts 2 and 3 of ERISA. These sections establish minimum requirements for participation, vesting, funding, and rate of accrual of benefits. *See* 29 U.S.C. §§ 1051–61; §§ 1081–86. There is nothing in these provisions relating to the amount of benefits to be calculated into the plan formula.

In *Phillips v. Amoco Oil Co.*, 799 F.2d 1464 (11th Cir.1986), *cert. denied* 481 U.S. 1016, 107 S.Ct. 1893, 95 L.Ed.2d 500 (1987), the Eleventh Circuit came to the sound conclusion that "ERISA does not require a successor employer to credit years of service with the predecessor employer where the successor does not maintain the benefit plan of the predecessor." *Id.* at 1471. Instead, that court held, "the statutory language and legislative history of the section make clear that Congress intended to leave the question whether to require such credit to the Secretary of the Treasury and that no such credit would be required absent the promulgation of regulations to that effect." *Id.* at 1470. We agree.

*Alessi v. Raybestos–Manhattan Inc.*, 451 U.S. 504, 513–514, 101 S.Ct. 1895, 1901–02, 68 L.Ed.2d 402 (1981) held that Congress intended to give administrators the ability to fashion their own plan formulas. "[T]he statutory definition of 'nonforfeitable' assures that an employee's claim to the protected benefit is legally enforceable, but it does not guarantee a particular amount or a method for calculating the benefit." *Id.* at 512, 101 S.Ct. at 1900. (finding that § 1053(a) of ERISA prohibited forfeiture of vested pension rights).

Guided by *Alessi*, the district court held that: "[u]nder the terms of section 1060(b), service with the predecessor employer must be taken into account for the purpose

of determining if the statutory minimums have been met for participation, vesting, funding, and rate of accrual of benefits, but not for actual computation of benefits." E.R. 40.

*Phillips, Alessi,* and a literal reading of § 1060(b) support our conclusion that WHC was not required to add the prior service to the benefits computation. Someday, the Secretary may promulgate a regulation requiring such action. Until then, we will refrain from imposing such a requirement.

## CONCLUSION

The appellants had hoped to obtain benefits that their earlier employers had already denied them. WHC had clearly never indicated that they would be granted such a windfall. We will not force the company to provide such benefits now.

AFFIRMED.