Roberta L. FRANKLIN,
Plaintiff–Appellant,

v.

Jack W. THORNTON, Thornton & Franklin Money Purchase Pension Plan, Thornton & Franklin Profit Sharing Plan, Defendants–Appellees.

Roberta L. FRANKLIN,
Plaintiff–Appellant,

v.

Jack W. THORNTON, Defendant–
Appellee.

Nos. 90–16274, 90–16717.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 17, 1992.

Decided Jan. 11, 1993.

**940**

Patrick J. Borchers, Downey, Brand, Seymour & Rohwer, Sacramento, CA, for plaintiff-appellant.

Terrence J. Cassidy, Porter, Scott, Weiberg & Delehant, Sacramento, CA, for defendants-appellees.

Before: GOODWIN, O'SCANNLAIN, and RYMER, Circuit Judges.

GOODWIN, Circuit Judge:

Plaintiff–Appellant Roberta L. Franklin ("Franklin") appeals the district court's grant of summary judgment in favor of Defendants–Appellees Jack W. Thornton ("Thornton"), Thornton & Franklin Money Purchase Pension Plan, and Thornton & Franklin Profit Sharing Plan (collectively "Thornton Defendants"), denial of her motion for summary judgment, and grant of attorney's fees to the Thornton Defendants. We reverse.

## FACTS

On August 2, 1988, Franklin, beneficiary under certain ERISA pension plans (the "Plans"), sent a letter to Callan & Associates, the firm assisting in administration of the Plans, and Thornton, trustee of the Plans, requesting distribution of her interest in the Plans. Thornton replied in a letter dated August 31, 1988, including formal consent documents and a valuation of her interest in the Plans of $67,141.35. Franklin did not sign and return the consent documents because, she asserts, she had spoken with an economic adviser at E.F. Hutton who recommended that she keep her money in the Plans' fund because it could earn a higher rate of return there than any of the available alternatives.

On December 22, 1988, Thornton sent a new set of consent forms and an updated, year-end calculation of Franklin's interest in the Plans, now valued at $68,712.90. Again Franklin failed to sign and return the consent forms. Thornton then consulted plan administrator Ken Callan who advised him to send Franklin a check in the amount of $68,712.90. Thornton sent the check, but Franklin returned it a few days later with a letter dated March 1, 1989, clarifying that she was in fact interested in a distribution, but only if the evaluation date was acceptable to her. In response, Thornton deposited the amount in a savings account at Plumas Bank, earning 6.05% interest. In a letter to Ken Callan dated March 14, 1989, Franklin again reiterated her interest in receiving a distribution of her benefits under the Plans, but explicitly stated that she would not consent to an evaluation date of September 30, 1988.

Franklin brought this action in the district court claiming breach of fiduciary duties imposed upon Thornton by ERISA, 29 U.S.C. §§ 1104, 1109, and seeking to enforce and clarify her rights under the Plans and to obtain other equitable relief. The district court ordered the parties to file cross motions for summary judgment to be heard without oral argument. The court then granted Thornton's motion for summary judgment, concluding that Franklin's written consent was not required prior to a valid distribution of her interest in the Plans by Thornton; or, in the alternative, that Franklin's initial letter of August 2, 1988 constituted effective written consent. The court also ordered Franklin to pay the Thornton Defendants $12,852.80 in attorneys' fees and expenses. This appeal followed.

## DISCUSSION

Franklin argues that the district court incorrectly construed the Plans as not requiring Franklin's written consent prior to a distribution of her interest in the Plans. We agree. In Articles V and VI, the Plans

explicitly provide that Thornton was required to have Franklin's written consent prior to his lump sum distribution to her. Further, a consent requirement is imposed by ERISA and the related tax statutes and regulations. If the district court's interpretation of the Plans were correct, the Plans would no longer qualify for tax favored status under ERISA.

*Consent Requirements Under the Plans*

■ In holding that Franklin's consent was not required, the district court relied on Section 5.03 of the Plans. Section 5.03, entitled "Termination of Service Prior to Normal Retirement Age," provides in relevant part:

> The Participant must consent in writing to the Advisory Committee's direction to the Trustee to make a distribution to the Participant and to the form of the distribution if: (1) the present value of the Participant's Nonforfeitable Accrued Benefit (excluding accumulated deductible employee contributions) exceeds $3,500; and (2) the qualified joint and survivor annuity provisions of Article VI apply to the distribution; and (3) the Advisory Committee wishes to make the distribution in a form other than a qualified joint and survivor annuity.

As the district court conceded, the first and third requirements were clearly met here: Franklin's accrued benefit exceeded $3,500, and the distribution to Franklin was in the form of a lump sum rather than a qualified joint and survivor annuity. The district court incorrectly concluded that the second requirement was not met, however, finding that "the qualified joint and survivor annuity provisions did not apply to plaintiff's distribution" because Franklin "had not designated any beneficiary to participate in such a joint payout." In reaching this conclusion, the district court apparently failed to consider another critical portion of the Plans—Section 6.04—which clearly contradicts the district court's holding. In relevant part, Section 6.04 provides:

> For Plan Years beginning after December 31, 1984, the Advisory Committee shall direct the Trustee to distribute a married or unmarried Participant's Non-forfeitable Accrued Benefit in the form of a qualified joint and survivor annuity, unless the Participant makes a valid waiver election (described in Section 6.05) within the ninety (90) day period ending on the date the Trustee will commence benefits (the "annuity starting date").

Contrary to the district court's suggestion that the qualified joint and survivor annuity provisions of Article VI do not apply unless Participants designate a beneficiary to participate in a joint payout, Section 6.04 clarifies that those provisions *do apply unless* the married or unmarried Participant makes a valid waiver election. Since the record contains no evidence that Franklin made such a valid election waiver, the qualified joint and survivor annuity provisions of Article VI did apply to Thornton's distribution to her.

Thornton argues that Section 6.05 indicates that the qualified joint and survivor annuity provisions do not apply. Thornton contends that Section 6.05 requires the administrator to provide written explanation of the annuity to the participant and his or her spouse, and obtain only the spouse's consent to a waiver of the annuity. Thornton argues (1) that Section 6.05 "expressly repudiates the notion that written consent to waive the annuity is required where the participant does not have a spouse," and (2) that because Franklin did not have a spouse, the qualified joint and survivor annuity provisions did not apply. The very language Thornton cites refutes his argument. Section 6.05 provides in part, "The Plan Administrator may accept as valid a waiver election which does not satisfy the spousal consent requirements, if the Plan Administrator establishes the Participant does not have a spouse...." This language hardly establishes that consent of the participant is not required when the participant is unmarried; instead, it merely clarifies, as common sense would dictate, that the *additional* requirement of spousal consent is not required if the participant is unmarried. Read in conjunction with Section 6.04, Section 6.05 supports Franklin's argument that the qualified joint and survivor annuity provisions did apply because Franklin had not made a valid election

waiver. The district court therefore erred in finding those provisions inapplicable. With all three of the Section 5.03 requirements met, Franklin's written consent was required prior to Thornton's distribution of her interest in the Plans, contrary to the finding of the district court.

In addition to Section 5.03's requirement, Thornton was required to obtain Franklin's written consent under Section 6.02. That section, in relevant part, provides language similar to Section 5.03, requiring the consent of the Participant and his or her spouse, if any, to the form of the distribution. The district court made no reference to this portion of Section 6.02, even though it provided an additional basis for finding that Franklin's consent was required.

*Consent Requirement Under ERISA*

█ In order for a plan to maintain its qualified status under ERISA, a participant's written consent must be obtained prior to a lump sum distribution exceeding $3,500. *See* 26 U.S.C. § 417(e). The terms and structure of the Plans make it abundantly clear that the drafters of the Plans intended to comply with the tax laws and maintain qualified status. The district court's incorrect interpretation of the Plans throws the Plans dramatically out of compliance with ERISA.

The statute and the implementing Treasury Regulations refute Thornton's argument that section 417 is "ambiguous" as to whether consent of an unmarried person such as Franklin is required for a valid distribution. In relevant part, section 417(e) provides:

(2) **Plan may distribute benefit in excess of $3,500 only with consent.**

—If—

(A) the present value of the qualified joint and survivor annuity . . . exceeds $3,500, and

(B) the *participant and the spouse of the participant* (or where the participant has died, the surviving spouse) *consent in writing to the distribution,*

the plan may immediately distribute the present value of such annuity.

26 U.S.C. § 417(e)(2) (emphasis added). Section 417(a)(2) then clarifies that the spousal consent requirements *do not apply* where the participant is not married. *See* 26 U.S.C. § 417(a)(2) (spousal consent to participant's election to waive qualified joint and survivor annuity not required where "there is no spouse").

The applicable Treasury Regulation removes any doubt whether consent of unmarried participants is required prior to a valid distribution. Treasury Regulation § 1.417(e)–1 provides:

*Written consent of the participant and, if the participant is married* at the annuity starting date and the benefit is to be paid in a form other than a QJSA, *the participant's spouse* (or, if either the participant or the spouse has died, the survivor) *is required* before the commencement of the distribution of any part of an accrued benefit if the present value of the nonforfeitable benefit is greater than $3,500.

Treas.Reg. § 1.417(e)–1(b)(2)(i) (emphasis added). Thus, the statute and the implementing regulations unambiguously require the written consent of an unmarried participant like Franklin prior to a lump sum distribution of her interest in the Plans when that interest exceeds $3,500, as Franklin's interest does here. The district court erred in holding otherwise.

*Franklin Did Not Consent to Thornton's Distribution*

█ The district court alternatively held that even if Franklin's consent was required, she "gave the consent in writing with her letter of August 2, 1988." Again, the district court erred.

Treasury Regulation 1.417(e)–1 provides: "No consent is valid unless the participant has received a general description of the material features, and an explanation of the relative values of, the optional forms of benefit available under the plan in a manner which would satisfy the notice requirements of section 417(a)(3)." Treas.Reg. § 1.417(e)–1(b)(2)(i). This regulation mandates a finding that Franklin's August 2, 1988 letter cannot serve as a valid consent to a lump sum distribution because she had

yet to receive the required description of features, and explanation of values, of her options. While Franklin's letter may generally reveal Franklin's desire or willingness to receive such a distribution as of that date, it does not constitute a valid consent for ERISA purposes.

Further, the record reveals that Thornton did not treat Franklin's August 2, 1988 letter as sufficient formal consent to the distribution. In both his August 30, 1988 and December 22, 1988 communications to her, Thornton included formal written consent forms which his own enclosures stated "must" be signed prior to a lump sum distribution. It is undisputed that Franklin never signed these forms. We thus conclude that Franklin's August 2, 1988 letter did not constitute a valid consent.

*Attorney's Fees*

■ Franklin contends that the district court abused its discretion in awarding attorney's fees to Thornton while granting his summary judgment motion. An abuse of discretion in the grant of attorney's fees in an ERISA case is found "only when there is a definite conviction that the court made a clear error of judgment in its conclusion upon weighing relevant factors." *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 452 (9th Cir.1980). The district court relied for its grant of attorney's fees on Section 8.07 of the Plans and 29 U.S.C. § 1332(g). Neither supports the award of fees.

Section 8.07 provides for the award of "all costs and fees" expended by the trustee, administrator or advisory committee when a participant initiates an action against any of those parties which is decided adversely to the participant. Because we hold that the district court erred in deciding the matter adversely to Franklin, Section 8.07 can no longer provide support for an award of fees.

Under Section 1132(g), ERISA's cost shifting provision, a "court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). In *Hummell,* this court set out the five factors to be considered in deciding whether an award of attorney's fees is proper in an ERISA case:

(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

634 F.2d at 453. The district court did not analyze Thornton's claim for attorney's fees in light of these factors, but instead merely concluded that § 1332(g) "directs the award of attorney's fees to a prevailing party in litigation such as this." The district court abused its discretion by granting Thornton fees as a matter of course without weighing the relevant factors provided by *Hummell.* Further, actually applying the *Hummell* test to the facts here reveals that fees should not be awarded to Thornton.

Finally, we refuse to grant fees to either Franklin or Thornton. Each party will bear its own costs and fees in this court.

REVERSED AND REMANDED.