Neil WINTERROWD; Kevin Yurkus; Gregory Stopp, Plaintiffs–Appellants,

v.

AMERICAN GENERAL ANNUITY INSURANCE CO., a Texas Corporation; Patrick Grady; The Western National Corporation Job Security Plan, Defendants–Appellees.

No. 01–57184.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 5, 2003.

Filed March 5, 2003.

William G. Wheatley, Jr., Law Offices of William G. Wheatley, Jr., Del Mar, CA, for the appellants.

D. Ward Kallstrom, Sonnenschein Nath & Rosenthal, San Francisco, CA, for the appellees.

Before: HALL, THOMPSON, and BERZON, Circuit Judges.

## OPINION

CYNTHIA HOLCOMB HALL, Circuit Judge:

Neil Winterrowd, Kevin Yurkus, and Gregory Stopp appeal the district court's grant of summary judgment in favor of American General Annuity Insurance Company ("AGAIC"). The district court held that Appellants' breach of contract claim was preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"). The sole issue on appeal is whether the district court properly determined that AGAIC offered severance benefits to Appellants pursuant to an ERISA "employee benefit plan." [1]

The district court had diversity jurisdiction pursuant to 28 U.S.C. § 1332, and 28 U.S.C. § 1291 confers jurisdiction over the instant appeal. We hold that AGAIC did not offer severance benefits to Appellants pursuant to either an amendment to an existing ERISA plan or a new ERISA plan. Accordingly, we REVERSE and REMAND.

## FACTS

Appellants Winterrowd, Yurkus, and Stopp worked as commissioned sales employees of Independent Advantage Financial and Insurance Services ("IAF") for several years. In February 1998, American General Corporation ("American General") acquired a controlling interest in IAF's parent company, Western National Corporation ("WNC"). WNC was renamed American General Annuity Insurance Company ("AGAIC").

In October 1998, American General decided to shut down IAF and to terminate its workforce. At this time, IAF salaried

---

1. Appellants concede that, if the case is governed by ERISA, the district court's grant of summary judgment should not be disturbed.

employees were eligible for the WNC Job Security Plan ("the Plan"), which provided termination benefits including severance pay, medical coverage, and life insurance.

John Graf, President of Retirement Services for American General, appointed Patrick Grady to oversee the termination of IAF's employees. Under Grady's direction, Appellants were notified by letters dated December 8, 1998, and December 10, 1998, that their employment would be terminated effective February 8, 1999. As non-salaried employees, Appellants were not eligible for the Plan. However, Appellants were offered the opportunity to receive a severance package in exchange for remaining on the job until the termination date. The benefits offered included a lump-sum severance payment,[2] medical and dental benefits, and outplacement assistance. The level of benefits to which each recipient was entitled was determined by AGAIC based on a ten-month rolling average of sales commissions. The letters, however, represented only that the benefits offered were calculated based on an "adjusted service date," and did not provide Appellants with any information about AGAIC's method of calculation.

On December 11, 1998, Appellants accepted their respective severance packages, and agreed to remain on their jobs until February 8, 1999. Shortly thereafter, AGAIC concluded that a six-month average of sales commissions, rather than a ten-month average, should have been used in the severance payment calculation. On December 21, 1998, AGAIC notified Appellants that their severance packages had been recalculated and that the sever-ance payments to which each was entitled would be substantially lower than previously indicated.[3] Like the December 8 and December 10 letters, the December 21 letters did not provide Appellants with any details regarding AGAIC's specific method of calculation.

Upon termination, Appellants received benefits in accordance with the December 21 recalculation. After unsuccessful negotiations with AGAIC, Appellants filed suit for common law breach of contract on January 20, 2000. On July 7, 2000, Appellants filed a motion for summary judgment. AGAIC opposed the motion, arguing that Appellants' breach of contract claim was preempted by ERISA. The district court denied Appellants' summary judgment motion on August 28, 2000, adopting AGAIC's theory that the WNC Board of Directors had amended its preexisting ERISA plan to include Appellants. The court also dismissed Appellants' complaint *sua sponte*, with leave to amend. On May 25, 2001, Appellants filed an amended complaint stating claims arising under ERISA. On September 10, 2001, AGAIC filed a motion for summary judgment on the amended claims. On the same day, Appellants filed a motion for reconsideration of the district court's August 28, 2000 order. Appellants asserted that new evidence proved that the WNC Board of Directors did not meet between February 1998 and March 2000, and therefore could not have amended the Plan during this time period.[4] The district court denied the motion for reconsideration. The court concluded that even if the new evidence undermined AGAIC's

2. The November 8 and November 10 letters provided that Winterrowd, Yurkus, and Stopp would receive lump-sum payments of $200,882.67, $153,654.10, and $99,336.01, respectively.

3. The December 21 letters provided that Winterrowd, Yurkus, and Stopp would receive lump-sum payments of $117,732.96, $48,343.79, and $63,055.47, respectively.

4. The new evidence consisted primarily of deposition testimony by Graf and Grady.

amendment theory, Appellants' state law claims were still preempted because the severance packages at issue were offered pursuant to a new ERISA plan. Because Appellants had conceded that, "if the offers were made pursuant to an ERISA plan, defendants are entitled to summary judgment," the court entered judgment in favor of AGAIC.

### STANDARDS OF REVIEW

We review a district court's grant of summary judgment *de novo*. *Ventura Packers, Inc. v. F/V JEANINE KATHLEEN*, 305 F.3d 913, 916 (9th Cir.2002). ERISA preemption is an issue of law, which we review *de novo*. *Velarde v. PACE Membership Warehouse*, 105 F.3d 1313, 1316 (9th Cir.1997).

### DISCUSSION

■ ERISA preempts all state laws "insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). A severance package can constitute an "employee benefit plan" within the meaning of ERISA. *See, e.g., Bogue v. Ampex Corp.*, 976 F.2d 1319, 1323 (9th Cir.1992) (holding that a severance package offered to key executives in order to retain them during a transitional period was an ERISA plan).

The district court held that AGAIC offered the severance package at issue to Appellants pursuant to an amended version of a preexisting ERISA plan. Alternatively, the district court held that the severance package itself was a newly-created ERISA plan. We address these contentions in turn, and conclude that neither of the district court's alternative theories have merit.

### A. The Amendment Theory

■ Section 402 of ERISA requires employee benefit plans to specify both an amendment procedure and a procedure for identifying persons with authority to amend. 29 U.S.C. § 1102(b)(3). These amendment procedures, once set forth in a benefit plan, constrain the employer from amending the plan by other means. *See Curtiss–Wright Corp. v. Schoonejongen*, 514 U.S. 73, 85, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995) ("[W]hatever level of specificity a company ultimately chooses, in an amendment procedure or elsewhere, it is bound to that level."). Neither AGAIC nor Appellants dispute the district court's finding that, pursuant to the terms of Plan, the WNC Board was the only entity endowed with amendment authority. Therefore, our inquiry is limited to whether the Board did, in fact, amend the Plan to include Appellants.

The record contains no evidence that the Board amended the Plan prior to December 8, 1998, the date on which AGAIC first offered to provide benefits to Appellants. Indeed, AGAIC does not contend that the Board amended the Plan before this time. Rather, AGAIC argues that Board action was not necessary to amend the Plan because the Board had implicitly delegated all management authority to Graf, who in turn delegated authority to amend the Plan to Grady.

■ AGAIC's position takes a far too casual view of ERISA's statutory requirements for amendment. The purpose of § 402's mandate that benefit plans set forth, and adhere to, definite procedures for amendment, is to ensure that "proposed plan amendments, which are fairly serious events, are recognized as such and given the special consideration they deserve." *Curtiss–Wright Corp.*, 514 U.S. at 82, 115 S.Ct. 1223. The requirement is also intended to give administrators the ability to sort out "the bona fide amendments from those that are not." *Id.* In

view of these legislative purposes, AGA-IC's theory of an implicit chain of delegation of authority from the Board, to Graf, to Grady, is entirely inconsistent with ERISA's requirement that companies adhere specifically to chosen amendment procedures.

■■■■ As an alternative to its chain of delegation theory, AGAIC also argues that the WNC Board amended the plan retroactively, at a meeting that took place on March 9, 2000. At this meeting, the Board adopted "Amendment No. 4" to the Plan, which purported to retroactively extend benefits to commissioned sales employees as of November 30, 1998. As the Third Circuit has recognized, an amendment that denies benefits to plan participants cannot be applied retroactively. *See Confer v. Custom Engineering Co.*, 952 F.2d 41, 43 (3d Cir.1991). In *Confer*, an employee who was injured in a motorcycle accident made a claim for resulting injuries. *Id.* The employer subsequently prepared a backdated amendment to its plan, denying coverage for injuries resulting from motorcycle accidents. *Id.* The court held the amendment invalid, holding that "the change by means of a formal amendment could operate only prospectively." *Id.*

The instant case is distinguishable from *Confer* in that the amendment purported to *extend* benefits under the Plan, rather than to deny them. However, the WNC Board did not amend the Plan until several months after Appellants filed suit alleging

common law breach of contract claims, and more than a year after all affected employees had been terminated. AGAIC provides no evidence to counter the logical conclusion that, in view of these circumstances, the sole purpose of the retroactive amendment was to preempt Appellants' state law claims. Therefore, the purpose and intended effect of the amendments in *Confer* and in the case at hand were the same—to retroactively alter a benefit plan to the advantage of the employer and to the detriment of the employee. Under these circumstances, we hold that the Board's March 9, 2000 amendment did not retroactively bring Appellants within the Plan.

## B. The New Plan Theory

■■■■ As an alternative to the amendment theory, AGAIC also maintains that its offer to provide severance benefits to Appellants created a new, ERISA-governed plan. There are few formal requirements for the creation of an ERISA plan. *See Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1503 (9th Cir.1985) ("Although ERISA contains numerous requirements that a plan must adhere to—a written instrument, named fiduciaries, public reports, etc.—these requirements are not part of the definition of 'plan.' ") (citations omitted).[5] However, an ERISA plan must invoke an "ongoing administrative program," *Fort Halifax Packing Co. v. Coyne*, 482

---

5. In the present case, it is important to note that Appellants were not subject to an existing ERISA plan, and the issue is therefore whether a de facto plan has arisen. There is an important distinction between the instant case and cases in which an ERISA plan already covers the employees at issue. *See Cinelli v. Security Pacific Corp.*, 61 F.3d 1437, 1443 (9th Cir.1995) (distinguishing between cases involving an existing plan and cases involving the creation of a de facto plan). Where an ERISA plan already exists, a given document

can only be considered "a plan document" if certain formal requirements are met. *Id.* at 1441 ("each such plan must (1) provide a policy and a method for funding the plan, (2) describe a procedure for plan operation and administration, (3) provide a procedure for amending the plan, and (4) specify a basis for payment to and from the plan.") (citation omitted). Where, as here, the issue is whether a de facto plan has been created, the formal requirements are considerably less stringent.

U.S. 1, 12, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987), and must enable reasonable persons to "ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir.1982) (en banc).

 Very few offers to extend benefits will fail the test laid out in *Donovan*, which requires neither formalities nor elaborate details. However, ERISA pertains to *"plans*, rather than simply to benefits." *Halifax*, 482 U.S. at 11, 107 S.Ct. 2211 (emphasis in original). A mere "decision to extend benefits," therefore, does not establish a plan within the meaning of ERISA. *Donovan*, 688 F.2d at 1373. Rather, it is axiomatic that a mere offer to extend benefits cannot properly be considered a "plan" unless two basic requirements are met. First, the benefits must be offered pursuant to an organized scheme. Second, the terms of the offer, in the context of the relevant surrounding circumstances, must enable a reasonable person to discern the basic elements of the benefits scheme.

AGAIC contends that, prior to sending the December 8 and December 10 letters, the company determined that severance benefits for commissioned sales employees would be calculated based on a six-month rolling average of each employee's commissions. For the purpose of our analysis, we assume AGAIC's contention to be accurate. However, the mere decision to calculate benefits pursuant to a formula does not create a plan if the intended recipients are unable to ascertain the specifics of the formula. Neither of the two letters sent by AGAIC to Appellants even vaguely referenced a six-month rolling average formula. Indeed, the December 1998 letters are entirely devoid of any basis for Appellants to confirm that a definite formula existed, or that it had been properly applied. Under the rule set forth in *Donovan*, which we adopt here, the December 1998 letters from AGAIC to Appellants were merely an offer to extend benefits, and cannot be classified as a "plan" within the meaning of ERISA.

Because the amorphous system of benefits communicated by AGAIC to Appellants is not an "employee benefit plan" within the meaning of ERISA, we need not consider whether the severance packages at issue implicated an ongoing administrative scheme. We REVERSE the district court's grant of summary judgment, and REMAND for consideration of Appellant's state law breach of contract claims.