Joseph C. **MILLER** and Karen M. Miller, Plaintiffs–Appellants,

v.

**TAYLOR INSULATION COMPANY** and Jon Nelson, Defendants–Appellees.

No. 94–1256.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 13, 1994.

Decided Nov. 4, 1994.

B. Douglas Stephens (argued), Clark J. Stojan, Mark A. Tarnow, Wessels, Stojan & Stephens, Rock Island, IL, for plaintiffs-appellants.

Michael J. Motto (argued), James T. Carlin, Carlin, Hellstrom & Bittner, Davenport, IA, for defendants-appellees.

Before POSNER, Chief Judge, MANION, Circuit Judge, and ASPEN, District Judge.*

POSNER, Chief Judge.

This is a suit for benefits under an employee welfare plan, with an alternative claim for breach of contract. The district judge held that the alternative claim was preempted and that the plaintiffs had no rights under ERISA, and he therefore granted summary judgment for the defendants and dismissed the suit. 794 F.Supp. 289 (C.D.Ill.1992).

Joseph Miller became the president of the principal defendant, Taylor Insulation Company, in 1973, and later the chairman of the board, the position that he held when he retired in 1979, at which time the company's chief executive officer was Jon Nelson, the other defendant. Upon retiring, Miller entered into a ten-year "Consultation and Non–Competition Agreement" with the company. The agreement provided, among other things, that "Miller shall also be entitled to participate in the sick-pay plan, the medical reimbursement plan and the group life insurance plan, which is currently effective and which has been authorized and adopted by Taylor." All these were plans in which Miller had participated as an employee up to the date of his retirement. The medical reimbursement plan is the one in issue. It was an insured plan that provided benefits to full-time employees and their beneficiaries. The insurance company listed Miller and his family as being covered by the policy that it had issued to Taylor.

In 1980 Taylor switched insurance companies without altering benefits. The new insurance company continued to list Miller and his family as enrolled for coverage; and between 1979 and 1987 Taylor reimbursed Miller and his family for various medical expenses. But in the latter year, with two years of the Consultation and Non–Competition Agreement still to go, Taylor, in search of lower premiums, again switched insurance companies. The new company delisted Miller and his family, since the policy provided—as had its predecessors—that coverage was limited to full-time employees, which Miller had ceased to be when he retired. Nelson told Miller that he was no longer a participant in the medical reimbursement plan, and this suit ensued.

██ The medical reimbursement plan was an ERISA plan but Miller argues that if he is not a plan participant ERISA is inapplicable and he can sue Taylor for breach of contract, since Taylor promised him in the Consultation and Non–Competition Agree-

* Hon. Marvin E. Aspen of the Northern District of Illinois.

ment that he could participate in the plan. The argument is unsound. ERISA preempts state law, including common law, that relates to an ERISA plan. 29 U.S.C. § 1144(a). There is no doubt that the medical reimbursement plan maintained by Taylor is an ERISA plan, 29 U.S.C. § 1002(1); *Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.,* 805 F.2d 732, 738–39 (7th Cir.1986); *Wickman v. Northwestern Nat'l Ins. Co.,* 908 F.2d 1077, 1082–83 (1st Cir.1990); *Scott v. Gulf Oil Corp.,* 754 F.2d 1499, 1502–03 (9th Cir.1985); *Donovan v. Dillingham,* 688 F.2d 1367, 1372–73 (11th Cir.1982) (en banc), or that Miller's claim relates to it. *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 137–40, 111 S.Ct. 478, 482–83, 112 L.Ed.2d 474 (1990); *District of Columbia v. Greater Washington Bd. of Trade,* —— U.S. ——, ——, 113 S.Ct. 580, 583, 121 L.Ed.2d 513 (1992); *Bartholet v. Reishauer A.G.,* 953 F.2d 1073, 1077 (7th Cir.1992). The naming of Nelson as an additional defendant does not alter this conclusion. Whether or not he can be sued under ERISA—a question to which the answer is, "It depends," see 29 U.S.C. § 1002(21)(A); *Williams v. Caterpillar, Inc.,* 944 F.2d 658, 665 (9th Cir.1991); *Dardaganis v. Grace Capital Inc.,* 889 F.2d 1237, 1242–43 (2d Cir. 1989); *Yeseta v. Baima,* 837 F.2d 380, 386 (9th Cir.1988); *Thomas v. Telemecanique, Inc.,* 768 F.Supp. 503, 507 (D.Md.1991), though Nelson has not attempted to make an issue of the matter—a plaintiff cannot be permitted to thwart Congress's decision to preempt state laws relating to pension and welfare plans by naming additional defendants besides those suable under ERISA.

So Miller cannot rely on any claim of breach of contract that he might, were it not for ERISA's preemption provision, have against Taylor. His only possible claim is an ERISA claim. As to that, Taylor's (and Nelson's) defense is simply that the terms of the medical reimbursement plan were stated in the successive insurance policies, which are materially identical, and that under those terms Miller was not eligible to participate in the plan, because he was not a full-time employee. End of case.

■ Not so fast. First of all, Taylor may be estopped to deny that Miller is a partici-

pant. Nelson himself conceded that the only possible interpretation of the Consultation and Non–Competition Agreement is that in it Taylor promised Miller that he would be a participant in the medical reimbursement plan (presumably—this has not been made an issue either—until the agreement expired). This was not a promise of any particular level of benefits, or a promise to waive the limitations applicable to other participants, such as an exclusion of benefits for preexisting conditions. It was a promise to treat Miller like the other participants. The promise would be entirely hollow if Miller were excluded from all possibility of receiving benefits simply because he was not a full-time employee. He was retiring, ceasing to be a full-time employee, with no expectation of resuming full-time employment. And everyone knew this. The agreement promised him coverage regardless. So, if, as turned out to be the case, the insurance policy did not cover Miller, it became Taylor's duty either to obtain an amendment to the policy or to pay any benefits that might be due under the terms governing entitlement (other than the status of being a full-time employee) itself.

■ Promissory estoppel is, in the view of this circuit at any rate, a part of the common law that we have been told (for example in *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 110, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989)) to create in order to plug gaps in ERISA. *Thomason v. Aetna Life Ins. Co.,* 9 F.3d 645, 647, 649–50 (7th Cir.1993); *Black v. TIC Investment Corp.,* 900 F.2d 112, 114–15 (7th Cir.1990). We do not understand Taylor's argument that only plan participants can plead promissory estoppel—that the concept cannot be used to make a person a plan participant. No reason for this limitation has been offered, and we cannot think of any. It is not as if Miller were statutorily ineligible to be a plan participant. Those former employees who have a colorable claim to benefits are eligible. 29 U.S.C. § 1002(7); *Firestone Tire & Rubber Co. v. Bruch, supra,* 489 U.S. at 117, 109 S.Ct. at 957–58; *Alexander v. Anheuser–Busch Cos.,* 990 F.2d 536, 539 (10th Cir.1993); *Shawley v. Bethlehem Steel Corp.,* 989 F.2d

652, 656 (3d Cir.1993). That's Miller. It would beg the question whether a person (provided that he is not outside the pale of the statute altogether) could become a plan participant by operation of promissory estoppel to conclude that he cannot invoke the doctrine unless he has a colorable claim to benefits that is based on the language of the plan itself.

Granted, promissory estoppel may not have as long a reach in an ERISA case as in an ordinary breach of contract case. Conceivably the policy against oral modifications of ERISA plans, on which see *Schoonmaker v. Employee Savings Plan,* 987 F.2d 410, 412 (7th Cir.1993); *Pohl v. National Benefits Consultants, Inc.,* 956 F.2d 126, 128 (7th Cir.1992); *Bartholet v. Reishauer A.G., supra,* 953 F.2d at 1078; *Musto v. American General Corp.,* 861 F.2d 897, 910 (6th Cir. 1988); *Nachwalter v. Christie,* 805 F.2d 956, 960 (11th Cir.1986), may bar using the concept of estoppel to modify the terms of a written plan on the basis of an oral promise, although *Kane v. Aetna Life Ins. Co.,* 893 F.2d 1283, 1286 (11th Cir.1990), is to the contrary, and the issue is unresolved in this circuit. *Schoonmaker v. Employee Savings Plan, supra,* 987 F.2d at 414 n. 4. There is a sense in which using promissory estoppel to allow into a written plan someone excluded by its terms amounts to an oral modification of the terms of a written plan. The main objection, however, to oral modifications is that they would enable the plan's integrity, and possibly its actuarial soundness, to be eroded by relatively low-level employees who in response to inquiries about the scope of coverage advise participants that a particular medical procedure is covered, even though the plan is explicit that it is not covered. *Vershaw v. Northwestern National Life Ins. Co.,* 979 F.2d 557, 559 (7th Cir.1992); *Pohl v. National Benefits Consultants, Inc., supra,* 956 F.2d at 128; *Cefalu v. B.F. Goodrich Co.,* 871 F.2d 1290, 1296 (5th Cir.1989). This concern is diminished when the doctrine is used to prevent an employer from denying that an employee (or as in this case a former employee) is a participant in the plan. Assurances that one is a participant, as distinct from assurances concerning the plan's coverage of a particular medical procedure, are unlikely to come from low-level employees, and did not in this case. *Cf. Willett v. Blue Cross & Blue Shield of Alabama,* 953 F.2d 1335, 1342 (11th Cir.1992). We need not pursue the issue further. The promise in this case was written. Enforcing it would not collide with a policy against allowing oral modifications of ERISA plans.

██ A promise, however, does not by itself a promissory estoppel make. The promisee must rely to his detriment, and his reliance must be reasonable (another reason why a person made ineligible by ERISA to participate in an ERISA plan could not invoke promissory estoppel to shoehorn his way into one). *Black v. TIC Investment Corp., supra,* 900 F.2d at 115. These issues were not resolved by the grant of summary judgment. Miller must show that, had it not been for the promise, he would have obtained comparable medical insurance, and he must further show that he was reasonable in believing that he was covered by the medical reimbursement plan. The latter issue is particularly piquant; for Miller was not only the chairman of the board of Taylor, he was also one of the administrators of the welfare plan. If he knew or should have known that the insurance policy in force when he retired was limited to full-time employees and that Taylor would not be willing to guaranty his and his family's medical expenses for ten years without insurance protection (we do not know the size of Taylor, but it must be pretty small, since in 1988 it had only twenty employees besides those covered by another plan as members of the asbestos workers' union), maybe he should have questioned whether he was really being promised this benefit. All these are matters to be explored by the district court on remand. Miller has made out a prima facie case of promissory estoppel.

 He has another string to his bow. He argues that if he was not a participant in the Taylor employee welfare plan by virtue of the doctrine of promissory estoppel, he was a, or rather the, participant in another plan—a one-man employee welfare plan created by Taylor in the provision that we quoted from the Consultation and Non–Competi-

tion Agreement. There are no particular formalities that a plan must comply with to be an ERISA welfare plan. It need not even be in writing; although its administrators have a fiduciary duty to reduce it to writing, 29 U.S.C. §§ 1022(b), 1102(a)(1), this is not a prerequisite to coverage. *Scott v. Gulf Oil Corp., supra,* 754 F.2d at 1503; *Memorial Hospital System v. Northbrook Life Ins. Co.,* 904 F.2d 236, 241 n. 5 (5th Cir.1990); *Donovan v. Dillingham, supra,* 688 F.2d at 1372. And—in this respect unlike an ERISA pension plan—it need not be funded. All that is required is that its terms can be determined with reasonable definiteness. *Scott v. Gulf Oil Corp., supra,* 754 F.2d at 1504; *James v. National Business Systems, Inc.,* 924 F.2d 718, 720 (7th Cir.1991). That's easy here. The duration of the one-man plan can readily be inferred from the duration of the agreement—ten years. And the remaining terms are incorporated by reference to the Taylor plan, with the sole exception of the term confining the plan to full-time employees—for that *is* the Taylor plan. The one-man plan, the plan custom-designed for Miller, differs from the Taylor plan in precisely that regard (plus having a ten-year limit).

But even if this is a valid theory of ERISA entitlement, cf. *Modzelewski v. Resolution Trust Corp.,* 14 F.3d 1374, 1377 (9th Cir. 1994)—we shall express some skepticism shortly—it does not avoid the necessity of a remand. Taylor argues that even if the agreement is read as entitling Miller to the benefits specified in the successive insurance policies despite the terms of those policies—that is, even if the agreement is read, as we have just put it, as the cornerstone of a one-man (well, one-family) plan with Miller and his family as the beneficiaries, so that if Taylor's insurer decided to delist the Millers Taylor would step into the insurer's place and continue to reimburse them—it rests on a mutual mistake, and should be rescinded. Taylor, the argument goes, would never have created the "plan" had it known that it would have no insurance protection; both it and Miller were mistaken in believing that there was insurance protection.

 A better name for this defense than mutual mistake is that there was a latent ambiguity in the contract. The parties thought they were negotiating over insurance; there was no insurance. It is like the famous case of the two ships named *Peerless,* where one party to the contract thought the contract was about one of the ships and the other thought it was about the other, so that neither thought the contract ambiguous, but of course it was once one dug beneath the surface. *Raffles v. Wichelhaus,* 2 H. & C. 906, 159 Eng.Rep. 375 (Ex. 1864). We took a tour of this curious corner of the law of contracts recently, and will not repeat it here. *Colfax Envelope Corp. v. Local No. 458–3M, Chicago Graphic Communications International Union,* 20 F.3d 750 (7th Cir. 1994). There are two questions about its application to this case. The first is whether it is a doctrine that ought to be adopted as part of the common law of ERISA, and the second is whether the elements of the doctrine are present. To the first question we answer "yes." It is an established if somewhat esoteric part of contract law and the plaintiffs have not suggested, and we cannot imagine, any reason why it would be inapt to ERISA. The second question is premature, like the application of the reasonable-reliance requirement of the doctrine of promissory estoppel; it has yet to be explored in the district court. But we shall not conceal our skepticism. As we said in *Colfax,* the heart of the doctrine of latent ambiguity is a requirement that both parties were *reasonable* in adopting a view of the contract that turned out to be incompatible with the view of the other party. The fact that one party adopts an unreasonable interpretation, however sincerely, cannot defeat the other party's reasonable expectations. *Id.* at 753. We find it difficult to imagine how Taylor could have been reasonable in supposing that the agreement might be read to give Miller no rights at all should it turn out that the insurance policies through which Taylor provided plan benefits did not cover Miller because they were confined to full-time employees. But that is merely our tentative view; it is a matter to be explored further by the district court.

The idea that Taylor violated a "one man" plan the full contents of which was a promise to pay Miller for certain medical expenses

specified in another document (the successive insurance policies) troubles us, though. It seems to be just a roundabout way of saying that Taylor broke a promise to Miller and must make good, and thus makes the case sound like a breach of contract suit after all—yet we said that Miller's contract claim was preempted by ERISA, and that recast as an ERISA claim he would have to show that the doctrine of promissory estoppel could be applied without violating ERISA. It seems odd, in fact formalistic in the worst sense, to make the issue of promissory estoppel evaporate by saying that Miller is not asserting a claim under an ERISA plan that on its face excludes him, but is asserting a claim under another plan, a one-man ERISA plan which has the happy property for him of being identical to the plan that he cannot establish his right to participate in without establishing the consistency of promissory estoppel with ERISA, but which does not require that he invoke promissory estoppel at all.

Surely what is going on here is that Miller is complaining that Taylor broke its promise to make him a participant in the plan. To redescribe the promise as a "one man" plan is to evade the issue whether the enforcement of a promise to make a person a participant exceeds the permissible scope of the doctrine of promissory estoppel in an ERISA plan. We think the redescription is improper, but we have already said that we think the doctrine does stretch as far as Miller needs to prevail, provided he can show reliance both actual and reasonable on the promise.

We apologize for the tedium of our analysis and exposition. Unfortunately ERISA, a statute primarily concerned with guaranteeing pension benefits, has with little forethought as far as we can see taken a large class of simple contract cases, involving claims against unfunded employer-administered welfare plans, dumped them into federal court, and made their resolution complicated and uncertain by subjecting them to both federal statutory and federal common law.

The judgment is affirmed insofar as it dismisses the contract claim but is reversed with respect to the ERISA claims, and the case is remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.