## PRINCIPAL MUTUAL LIFE INSURANCE COMPANY, Plaintiff–Appellee,

v.

## CHARTER BARCLAY HOSPITAL, INCORPORATED, Defendant–Appellant.

No. 95–2786.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 19, 1996.

Decided April 3, 1996.

**54**

Louis C. Roberts, Daniel J. McMahon, Noelle Swanson Berg (argued), Wilson, Elser, Moskowitz, Edelman & Dicker, Chicago, IL, for plaintiff-appellee.

Ronald S. Mangum, David R. Louthan, Joshua A. Stein, Marian C. Nealon (argued), Mangum, Smietanka & Johnson, Chicago, IL, for defendant-appellant.

Before POSNER, Chief Judge, and KANNE and ROVNER, Circuit Judges.

POSNER, Chief Judge.

Principal Mutual Life Insurance Company issued a group insurance policy to Eady's Scale Corporation, a small family business. Robert Eady, the son of the corporation's owner, ran up a bill for almost $50,000 at a psychiatric hospital owned by Charter Barclay Hospital, Inc. After Principal denied Eady's claim for reimbursement, on the ground that Eady was not in fact an employee of his father's firm, Charter billed Principal. Principal responded with this suit, naming Eady's Scale Corporation and Robert Eady as defendants along with the hospital and seeking a declaration that it has no liability for the hospital bill. After settling with Eady's Scale Corporation and obtaining a default judgment against Robert Eady, Principal moved successfully for summary judgment against Charter, precipitating this appeal. Charter argues that, as assignee of Robert Eady's rights as a participant in the employee benefits plan, it was entitled to notice of Principal's denial of his claim and that the district court should have allowed it to amend its answer to file a counterclaim charging Principal with fraud and related torts. Charter presented no evidence of any assignment and no evidence that it notified Principal of the "assignment" before it filed its answer to Principal's suit. The suit is governed by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 *et seq.*, because the policy that Principal issued to Eady's Scale Corporation was an employee welfare plan within the meaning of the Act.

When Eady's Scale Corporation joined the plan in November 1991, Robert Eady was one of those who submitted an application to Principal for coverage under the plan, representing that he was a full-time employee of the corporation regularly scheduled to work at least 30 hours a week, these being the conditions of eligibility. (We shall refer to the conditions as "full-time employment.") Shortly after Eady was admitted to the hospital on March 27, 1992, complaining of constant ringing in the ears, depression, and other distress, Charter called Principal to verify that Robert Eady was indeed covered by the plan, and was told that he was. Prin-

cipal in turn requested Charter to submit the records of Eady's hospital stay, which it did. The records cast serious doubt on whether Eady was employed full time, or for that matter part time, by his father's corporation. Eady described himself in these records as a heavy user of alcohol, cocaine (including crack cocaine), heroin, and marijuana; as a male stripper and pimp facing criminal charges for these activities; as a taxi driver; and said that he was sleeping on the floor of his father's shop *but not working there.* Principal investigated, concluded that Eady was indeed not a full-time employee of Eady's Scale Corporation, and on December 28, 1992, wrote him that his claim for reimbursement of his hospital expenses was denied and that if he wished to appeal the denial to a higher level within the insurance company he had 60 days in which to do so. We do not understand any of the parties to contend that this deadline was unreasonable. See 29 C.F.R. § 2560.503–1(g)(3); *Tiger v. AT & T Technologies Plan,* 633 F.Supp. 532, 534 (E.D.N.Y.1986); cf. *North Memorial Medical Center v. Gomez,* 59 F.3d 735, 739 (8th Cir.1995).

Probably by this time Eady was back in California; in any event he did not appeal the denial or otherwise respond to the letter informing him of it. He didn't pay his hospital bill either, which in May 1993 Charter submitted to Principal, precipitating this suit. Principal argues that Eady has no rights under the insurance policy both because he was not a full-time employee and because he failed to exhaust, within the time allowed, the internal remedies that the policy gave applicants.

Eady's Scale Corporation audaciously moved for summary judgment on the ground that Robert Eady had been employed by the corporation full time between December 1, 1991, and his hospitalization in March of the following year. The motion was weakly supported by an affidavit from dad, who while asserting that he had paid workers' compensation taxes for his son attached no documentation, other than an informal and unverified "individual payroll record," substantiating an employment relation. Principal entered into a stipulation with the scale corporation in which the corporation agreed that Robert Eady had not been a full-time employee, withdrew its motion for summary judgment, and agreed to the entry of a final judgment in favor of Principal.

The district judge's ground for dismissing Charter's claim for the reimbursement of Robert Eady's hospital expenses was that an assignee of a claim for benefits under ERISA is never entitled to notice of the denial of the claim. In defense of the district judge's ground (for which we cannot find any support in the case law), Principal acknowledges both that an assignee is a beneficiary within the meaning of ERISA, *Decatur Memorial Hospital v. Connecticut General Life Ins. Co.,* 990 F.2d 925, 927 (7th Cir.1993); *Kennedy v. Connecticut General Life Ins. Co.,* 924 F.2d 698, 700 (7th Cir.1991); *Lutheran Medical Center v. Contractors, Laborers, Teamsters & Engineers Health & Welfare Plan,* 25 F.3d 616, 619 (8th Cir.1994); *Misic v. Building Service Employees Health & Welfare Trust,* 789 F.2d 1374, 1378 n. 4 (9th Cir.1986) (per curiam), and that ERISA authorizes plan beneficiaries as well as plan participants to sue for benefits due. 29 U.S.C. § 1132(a)(1)(B). But it argues that since the statute requires only that notice of the denial of a claim of benefits be sent to "any participant or beneficiary whose claim for benefits under the Plan has been denied," § 1133, it complied by sending notice to Robert Eady, a participant (more precisely, a claimed participant). This is a weak argument. Had Eady assigned the claim to Charter, making the latter a beneficiary, then the claim that Principal denied, though *submitted* by Eady, was actually the claim of the beneficiary, Charter. Principal further argues, a little more practically, that it is impossible for plan administrators to notify unknown assignees. This is certainly true, but we do not understand Charter to be arguing that it was entitled to notice even if Principal did not know that it was an assignee; that would be a preposterous argument. The Department of Labor's regulations under ERISA appear to say that notice is required to be provided only to the claimant, 29 C.F.R. § 2560.503–1(e), (f). But once again we point out that if there is a valid assignment the hospital becomes the only claimant, *Allianz Life Ins.*

*Co. v. Riedl,* 264 Ga. 395, 444 S.E.2d 736 (1994), the original claimant having given up his claim by the assignment.

For reasons well illustrated by this case, medical providers—perhaps especially providers of medical services to psychiatric patients—who take assignments of their patients' rights to reimbursement from insurers (or other payment sources) cannot protect those rights unless the insurer notifies them when the patients' claims are denied. Robert Eady submitted a claim and by the time it was denied he was in another state, had no interest in the payment of his hospital bill, and in all likelihood could not, as a practical matter, be made to pay it.

■ We suspect, while acknowledging a surprising vacuum of case law or of other authority, that an assignee is entitled to notice of the denial of a claim of benefits submitted by the assignor. We recognize the potential burden on insurance companies but point out that they can protect themselves by requiring that hospitals submit clear and unmistakable proof of assignment, cf. *id.* 444 S.E.2d at 737, as distinct from merely an authorization for direct payment. (On the distinction, see, e.g., *Kelly Health Care, Inc. v. Prudential Ins. Co. of America, Inc.,* 226 Va. 376, 309 S.E.2d 305 (1983); *Robert S. Pinzur, Ltd. v. The Hartford,* 158 Ill.App.3d 871, 110 Ill.Dec. 961, 963–66, 511 N.E.2d 1281, 1283–86 (1987).) Of course any such entitlement to notice would depend on there being an assignment and on the insurer or other plan administrator having notice of it. Of neither condition is there any evidence in this case. As is common, the hospital sought payment directly from the insurer; and it is conceivable, though far from certain and not argued, that if the patient was covered by the insurance policy the hospital had a legal right to payment, either on a third-party beneficiary theory or on a restitutionary theory. For contrasting perspectives on this issue, compare *Parrish Chiropractic Centers v. Progressive Casualty Ins. Co.,* 874 P.2d 1049, 1056 (Colo.1994), and *Kelly Health Care, Inc. v. Prudential Ins. Co. of America, Inc., supra,* 309 S.E.2d at 307, with *United States v. Allstate Ins. Co.,* 910 F.2d 1281 (5th Cir. 1990), and 15A *Couch on Insurance* § 56:69

(2d ed. 1983 & 1995 supp.); see also 4 George E. Palmer, *The Law of Restitution* § 22.2, p. 335 (1978). The cases we have cited are state-law cases and the hospital's rights against the administrator of an ERISA plan would be governed by federal common law, 29 U.S.C. § 1144; *Hermann Hospital v. MEBA Medical & Benefits Plan,* 845 F.2d 1286, 1290 (5th Cir.1988); cf. *Kane v. Aetna Life Ins.,* 893 F.2d 1283, 1285–86 (11th Cir. 1990), borrowing judiciously from the general principles of the common law. We need not explore this issue further. There is no evidence of an actual assignment and also no evidence that Charter notified Principal of the assignment (if there was one) when made. For that matter, Charter has never assigned a date to the assignment, reinforcing our skepticism that there was an assignment.

■ Yet it would not be quite cricket of us to place decision on the ground that the conditions for the duty (if there is a duty, which we have not definitively decided) of notice to an assignee were not fulfilled; for until the oral argument of the appeal, Principal had not pressed the point and it is possible that Charter was lulled into thinking that Principal was fighting the claim on other grounds. From the beginning, however, Principal has urged that Robert Eady was not a full-time employee, has bolstered its contention with the hospital records, and has pointed out that with the withdrawal of the employer's motion for summary judgment there is not a shred of evidence in the record that Eady was a full-time or any other type of employee of his father's company. Charter had the burden of proving coverage, so if it has no credible evidence with which to counter Principal's submission it must lose. It has no evidence, period, for the withdrawal of the motion for summary judgment carried with it, out of the case, dad's very probably false affidavit. Charter claims that Principal somehow coerced Eady's Scale Corporation to withdraw the motion, but has not attempted to substantiate this claim. It could have attempted to obtain a fresh affidavit from Eady *père* or other evidence of Robert Eady's employment, but did not. The only evidence on the issue consists therefore of

medical records strongly suggesting that he was not employed by his father's firm. Since employment normally generates a considerable paper trail, the absence of any such paper—for no effort was made to establish that the "individual payroll record," which is undated, unsigned, and incompletely filled in, is the sort of document that would be admissible in evidence and hence that Charter could rely on in resisting summary judgment—reinforces the inference from the medical records. With *all* the evidence against the party having the burden of proof, that party cannot demonstrate a triable issue and so withstand summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

▪ The judge refused to allow Charter to amend its answer to add counterclaims against Principal because the motion came too late. On August 26, 1994, the judge had fixed the deadline for the completion of pretrial discovery at November 30 and the deadline for filing dispositive motions (i.e., motions for summary judgment) at December 12, and had scheduled a status conference for December 13, saying that what he would expect by then was that "you'll have completed your discovery, that if all these cross-claims are to be filed [Charter's counsel had told the judge he was thinking of filing cross-claims and counterclaims], that they be filed, and that the dispositive motions be filed because the next time I talk to you, I want to set up a schedule for the briefing" of the dispositive motions. Charter's motion to amend its answer to add counterclaims was filed on December 12. Charter argues that the motion was timely in light of the passage that we have quoted, or more precisely that the judge abused his discretion in refusing to grant the motion, on the ground that it was untimely, since he had led Charter to believe that December 12 was the deadline for such a motion. But if discovery was to be complete by November 30, any motions to add new claims would have to be filed, and indeed ruled on, sufficiently long before then to enable the parties to conduct any necessary discovery on those new claims. Obviously if Principal was to face a charge of fraud it would be entitled to conduct discovery on that charge. If Charter thought the judge was setting too tight a schedule, the time to object was at the August status conference.

▪ In any event the counterclaims that Charter wanted to file have no merit; in fact are frivolous; and the relief sought in them could in any event have been obtained without the formality of counterclaiming. The counterclaims charge fraud, negligent misrepresentation, and conspiracy. The first two charges grow out of Principal's having replied in the affirmative to Charter's query about whether Robert Eady was a covered employee, and the third—implausible, unsubstantiated, and unnecessary to discuss further—out of the settlement between Principal and Eady's Scale Corporation in which the latter recanted its contention that Robert Eady had been a full-time employee. The first two claims are better described as promissory estoppel, which we have held is an available basis for claiming benefits under ERISA, notwithstanding the rule that ERISA claims cannot be modified orally. *Miller v. Taylor Insulation Co.,* 39 F.3d 755, 758–59 (7th Cir.1994); but see *DeVoll v. Burdick Painting, Inc.,* 35 F.3d 408, 412 (9th Cir.1994). The claim is that, in providing medical services to Eady, Charter relied on Principal's representation that he was a covered employee. But reliance on a representation must be reasonable to make out a claim for promissory estoppel. *Miller v. Taylor Insulation Co., supra,* 39 F.3d at 759. Charter's obviously was not. As an experienced hospital operator, it is charged with knowing that insurers of employee benefit plans do not, upon receiving an application for coverage by a person claiming to be an employee, conduct an in-depth investigation of the applicant's entitlement to coverage and certify that entitlement in answer to inquiries by medical providers. That would be rather an absurd burden to place on the insurer, when we reflect that the plan might cover hundreds or even thousands of employees. All Principal verified was that Eady was enrolled in the plan. Charter knew or should have known that if it turned out that Eady had enrolled under false pretenses, whether by misrepresenting his employment status or by making false and material misrepresentations concerning his health status, Principal

would not be obligated to reimburse his hospital costs.

AFFIRMED.