**Terrence F. SHIELDS, individually and on behalf of all others similarly situated, Plaintiff–Appellant,**

v.

**LOCAL 705, INTERNATIONAL BROTHERHOOD OF TEAMSTERS PENSION PLAN, Barbara R. Reynolds, Daniel C. Ligurotis, et al., Defendants–Appellees.**

No. 98–2627.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 22, 1999.

Decided Aug. 24, 1999.

Suzanne McCarthy (argued), Chicago, IL, for Plaintiff–Appellant.

Barbara J. Hillman, Robert A. Seltzer (argued), Cornfield & Feldman, Chicago, IL, for Defendants–Appellees.

Before POSNER, Chief Judge, and FLAUM and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Terrence Shields brought this action against Local 705, International Brotherhood of Teamsters Pension Plan ("the Local 705 Pension Plan" or "the Plan") and various individuals who have served as administrators or trustees of the Plan. In the claims relevant to this appeal, he alleged (1) that he is entitled to promissory estoppel under the federal common law to enforce a promise by Local 705 that his service with his previous employer would count toward his pension benefits; (2) that the deduction of health insurance premiums from his monthly pension check violates ERISA's antiassignment, anti-alienation provisions; and (3) that the defendants' failure to provide him certain plan documents violated ERISA. Mr. Shields now seeks review of the district court's grant of summary judgment to the defendants on the first two claims and its dismissal of the third claim. He also appeals the district court's denial of his motion to strike certain documents related to the promissory estoppel claim.[1] For the reasons set forth in the following opinion, we affirm the judgment of the district court.

# I
# BACKGROUND

## A. Facts

From October 1962 until April 1967, Terrence Shields worked for Truck Rail Terminals ("TRT") and was a member of the Chicago Truck Drivers Union. In April 1967, TRT merged with Lasham Cartage, whose drivers belonged to Local 705, International Brotherhood of Teamsters ("Local 705"). Before the merger, the Secretary–Treasurer of Local 705 told the TRT drivers that, for purposes of health, welfare and pension benefits, they would be given credit for their time with TRT if their service with TRT and Lasham Cartage was continuous. He also sent them a letter, dated March 31, 1967, to the same effect. Mr. Shields and 35 other TRT drivers joined Local 705 and started to work for Lasham Cartage.

In the summer of 1967, Mr. Shields complained to the National Labor Relations Board ("NLRB") about his loss of seniority due to the merger. He contended that Local 705 should have inserted him into the seniority roster with the Lasham Cartage drivers according to the amount of time he had worked at TRT rather than placing him behind the Lasham Cartage drivers. Mr. Shields claims that the NLRB's decision rejecting his seniority claim relied on the fact that he was to receive health, welfare, and pension credit for his time with TRT prior to the merger.

In 1986, the Local 705 Pension Plan introduced a "30 years and out pension," also called the "30–Year Service Pension." Eligibility for this pension requires 30 years of "future benefit service," which is defined as employment with a "contributing employer"—an employer that contributes to the pension fund. Mr. Shields believes that he became eligible for this pension in October 1992 (30 years after he began at TRT). He contemplated retiring

---

**1.** The district court had previously certified a class with respect to one count of the complaint but dismissed that count and three other counts. The only claims that are before us in this appeal are Mr. Shields' individual ERISA and promissory estoppel claims.

in November 1992 but was informed that he would be eligible only for the "25 years and out pension" or the "30 year reciprocal pension" rather than the more valuable "30 years and out pension." Because TRT was not a contributing employer, he was told, his 4.5 years of service with TRT was not "future benefit service" but instead was only "past benefit service," which counts only toward the "reciprocal pension." As a result, he qualified only for the "25 years and out" pension or the "30 year reciprocal" pension.

In ill health, Mr. Shields retired in January 1994. He began receiving benefits under the "30 year reciprocal pension" on February 1, 1994. Mr. Shields also receives medical coverage under the Local 705 Health and Welfare Plan ("Health Plan"). Health Plan premiums are automatically deducted each month from the plaintiff's pension payment.

## B. Holding of the District Court

### 1.

The district court granted summary judgment for the defendants on Mr. Shields' claim that the deduction for Health Plan premiums from his monthly pension check violates the antiassignment, anti-alienation provisions of § 206(d) of ERISA and that this violation constitutes a breach of fiduciary duty under § 404 of ERISA (29 U.S.C. § 1104). The district court determined that, under Treasury regulation 26 C.F.R. §§ 1.401(a)–1.413(e)(1), the deduction arrangement does not constitute an "assignment or alienation" because it is revocable at any time by the participant and the Health Plan has acknowledged in writing that it has no enforceable right to the pension benefits. The court then concluded that, although the defendants had not complied with the requirement that the written acknowledgment be filed within 90 days of the commencement of the arrangement, the defendants were now in compliance, and Mr. Shields was entitled to no further relief because he had not shown any harm

from his participation in the deduction arrangement. In sum, the court held, all Mr. Shields sought was to bring the Plan into compliance with the regulations, and his grievance has been remedied.

The district court also denied Mr. Shields' motion to strike the two documents used by the defendants to prove compliance. Noting that the documents came into existence only after the close of discovery, the court held that granting the motion would force the court to proceed to trial in a situation in which the grievance has already been remedied.

### 2.

The district court also granted summary judgment for the defendants on Mr. Shields' promissory estoppel claim under federal common law to enforce Local 705's promise that TRT drivers would receive full credit toward their pension benefits for their years of service with TRT. The court held that, although this court has not resolved whether promissory estoppel may be recognized in cases involving multi-employer funded pension plans, the teaching of *Black v. TIC Investment Corp.*, 900 F.2d 112 (7th Cir.1990), and *Russo v. Health, Welfare & Pension Fund*, 984 F.2d 762 (7th Cir.1993), is that promissory estoppel claims should not be recognized when they threaten the actuarial soundness of a plan. In this case, the district court held, requiring the Local 705 Pension Plan—a multi-employer funded plan—to make payments outside of those required by its strict terms would hurt others associated with the Plan and threaten the Plan's actuarial soundness. The court thus granted summary judgment to the defendants and denied as moot Mr. Shields' motion to strike two documents related to this claim.

## II

## DISCUSSION

### A. Promissory Estoppel

We first address the plaintiff's federal common law claim for promissory estoppel

against the Local 705 Pension Plan. Mr. Shields alleges that, in March 1967, the Secretary–Treasurer of Local 705 told the TRT drivers that they would be "given credit" for their years of service with TRT (for purposes of health, welfare and pension benefits from Local 705) if their service with TRT and Lasham Cartage was continuous.[2] Mr. Shields contends that these representations meant that his years of service would be counted as if he had always been a member of Local 705. Accordingly, he submits, when he retired in January 1994, he should have been credited with over 31 years of service (4.5 years at TRT and almost 27 years at Lasham Cartage), thus qualifying him for the "30 years and out" pension, rather than the less valuable "25 years and out" or "30 year reciprocal" pensions.

### 1.

We note at the outset that the Plan at issue in this case is a multi-employer, funded pension plan governed by ERISA. The courts of appeals have not resolved fully the extent to which estoppel claims can be recognized against ERISA plans. At least one circuit has adopted a brightline rule forbidding promissory estoppel claims against an employee benefit plan governed by ERISA. *See Miller v. Coastal Corp.*, 978 F.2d 622, 625 (10th Cir.1992), *cert. denied*, 507 U.S. 987, 113 S.Ct. 1586, 123 L.Ed.2d 152 (1993); *cf. Nachwalter v. Christie*, 805 F.2d 956, 957 (11th Cir.1986) (holding that estoppel cannot be used to modify the written terms of an ERISA plan). In determining whether to allow the estoppel claim to go forward, several other courts have focused on the adverse effects that estoppel would have on a plan's actuarial soundness. *See, e.g., Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1300 (6th Cir.1991); *Chambless v. Masters, Mates & Pilots Pension Plan*, 772 F.2d 1032, 1041 (2d Cir.1985), *cert. denied*, 475 U.S. 1012, 106 S.Ct. 1189, 89 L.Ed.2d 304 (1986); *Rosen v. Hotel & Restaurant Employees & Bartenders Union*, 637 F.2d 592, 598 & n. 9 (3d Cir.), *cert. denied*, 454 U.S. 898, 102 S.Ct. 398, 70 L.Ed.2d 213 (1981).

Cases from our own circuit also demonstrate an awareness that concerns of actuarial soundness present special obstacles to the application of estoppel principles to an ERISA plan. *See, e.g., Swaback v. American Info. Techs. Corp.*, 103 F.3d 535, 542 n. 17 (7th Cir.1996); *Krawczyk v. Harnischfeger Corp.*, 41 F.3d 276, 280 (7th Cir.1994); *Russo v. Health, Welfare & Pension Fund, Local 705 Int'l Bhd. of Teamsters*, 984 F.2d 762, 767 n. 4 (7th Cir.1993); *Black v. TIC Inv. Corp.*, 900 F.2d 112, 115 (7th Cir.1990). In light of this concern, we have so far recognized only a limited application of estoppel principles in the ERISA context. In *Black v. TIC Investment Corp.*, we permitted an estoppel claim against a single-employer, unfunded welfare benefit plan, explicitly resting our decision on a finding that estoppel recovery would pose no threat to the plan's actuarial soundness because an unfunded plan has no fund to be depleted by the payment of benefits. *See id.* at 115.

We made clear in *Black* that our recognition of estoppel principles in the ERISA context was limited to single-employer, unfunded welfare benefit plans. *See id.*

2. In his deposition, Mr. Shields testified:
 Q. Do you recall what his exact words were?
 A. Exact no, but I can come close. It was to the effect we would not be hurt in any way by this merger ·or consolidation. That we would be given credit for all our time with Truck Rail insofar as pension and medical benefits were concerned.
 R.53, Ex.A, at 19.

The record also includes a written communication from the Union to the Truck Rail drivers. It stated in pertinent part:
 Notice to all Truck Rail Drivers:
 This is to advise you that all Truck Trail [sic] drivers coming into Local 705 International Brotherhood of Teamsters will be given credit for all their time, further, you will all be given benefits *immediately* for health & welfare and pension benefits.
 R.53, at Tab 2.

("[E]stoppel principles are applicable to claims for benefits under unfunded single-employer welfare benefit plans under ERISA. We express no opinion as to the application of estoppel principles in other situations."). We have since acknowledged that this limitation stemmed from a concern that "a broader application of estoppel principles might pose a risk to plans that rely on actuarial soundness." *Coker v. Trans World Airlines, Inc.*, 165 F.3d 579, 585 (7th Cir.1999).[3] As we explained in *Coker*, our decisions subsequent to *Black* repeatedly have declined to decide whether, as an abstract proposition, estoppel reaches beyond the narrow application permitted in *Black*.[4] *See id.* Specifically, we have not decided whether estoppel principles could ever apply to multi-employer, funded benefit plans. *See Swaback*, 103 F.3d at 542 n. 17; *Krawczyk*, 41 F.3d at 280; *Russo*, 984 F.2d at 767 & n. 4.

The district court in this case did not decide that an estoppel claim could never be brought against a multi-employer, funded plan. Instead, the court, noting our concern about the application of promissory estoppel to multi-employer plans when the application of the doctrine would affect the actuarial soundness of the plan, determined that, under the facts and circumstances of this particular case, potential harm to the Local 705 Pension Plan's actuarial soundness precluded the application of estoppel principles. *See Shields v. Local 705, Int'l Bhd. of Teamsters*, No. 96 C 1928, 1998 WL 341800, at *7 (N.D.Ill.1998).

Today we again decline to decide whether estoppel principles could ever apply to a multi-employer, funded benefit plan. Because we conclude that Mr. Shields has not made out the elements of an estoppel claim, we need not take the unnecessary and perhaps imprudent step of adopting a rigid per se rule against estoppel in the context of a multi-employer funded plan.[5]

**2.**

As a threshold matter, we do not believe that the promise made here is suf-

---

**3.** In *Black*, we explained:

[E]ven among courts that recognize the availability of estoppel in ERISA cases, there is real resistance to the use of that doctrine. *See, e.g., Haeberle v. Board of Trustees*, 624 F.2d 1132, 1139 (2d Cir. 1980). The reason ordinarily cited for this reluctance (and for earlier refusals to allow estoppel at all, *see, e.g. Thurber v. Western Conference of Teamsters Pension Plan*, 542 F.2d 1106 (9th Cir.1976)) is a concern for the actuarial soundness of the ERISA plan. There are two types of ERISA plans: pension plans, which are funded and have strict vesting and accrual requirements; and welfare plans such as the one involved in this case, which have no such requirements. *See Young v. Standard Oil (Indiana)*, 849 F.2d 1039 (C.A.7th Cir.), *cert. denied* 488 U.S. 981, 109 S.Ct. 529, 102 L.Ed.2d 561 (1988). In the case of an unfunded welfare plan, there is no particular fund which is depleted by paying benefits. Thus there is no need for concern about the Plan's actuarial soundness.

One scholar, noting the trend toward allowing use of estoppel in ERISA cases, has noted that where estoppel is disallowed, the pension plan involved is ordinarily a multi-employer plan. S. Bruce, *Pension Claims: Rights and Obligations* 404 (1988). The reason for reluc-

tance in such cases is the fact that the plan has multiple fiduciaries with control over a common fund. To allow one employer to bind the fund to pay benefits outside the strict terms of the Plan would be to make all the employers pay for one employer's misrepresentations, and to the extent that such payments damage the actuarial soundness of the Plan, it hurts all the employees as well. It could even encourage employers to make intentional misrepresentations so as to bind the Plan to make improper payments in favor of their own employees.
*Black*, 900 F.2d at 115.

**4.** We have, since *Black*, allowed the use of estoppel in a different context in an ERISA case. In *Miller v. Taylor Insulation Co.*, 39 F.3d 755, 758–59 (7th Cir.1994), we applied estoppel principles to enforce an employer's written assurance that a particular employee would be a participant in the ERISA benefit plan. *See id.*

**5.** Mr. Shields contends on appeal that the district court's factual finding concerning the threat to actuarial soundness was simply not supported by the evidence. However, because we conclude that the plaintiff has not established the elements of an estoppel claim, we need not review this determination.

ficiently definite to require the Plan to include Mr. Shields in all benefits plans that might be established in the future. Mr. Shields was told by the Secretary-Treasurer of Local 705 that, upon coming into the Local, he would be given credit for all his time and would receive pension and other benefits immediately. The parties do not dispute that he did in fact receive those benefits then available to the members, including the current pension plan. Indeed, when the Union's pension plan scheme was revised in 1989, the revised plan specifically provided that employees like Mr. Shields who had credited service before joining Local 705 retained that credit under the new plan. *See* R.52, Ex.B, § 3.3(a). That "past benefit service," R.52, Ex.B, § 2.3(j), continues to make him eligible for several of the pensions now offered by the Fund. It does not make him eligible for a pension option created after he joined Local 705 because that particular option counts only "future benefit service." *See* R.52, Ex.B, § 2.3(k); *see also* R.52, Ex.B, § 4.6. We do not believe that the promise made to Mr. Shields can be fairly characterized as sufficiently definite to bind the Fund to credit him with past service for every pension fund innovation developed after he entered the Union and received the benefits then available on the basis of his earlier service.

### 3.

 A federal common law claim of promissory estoppel in the ERISA context requires the plaintiff to demonstrate that he has relied to his detriment on a promise and that his reliance was reasonable. *See Miller v. Taylor Insulation Co.*, 39 F.3d 755, 759 (7th Cir.1994).[6] In this regard, Mr. Shields has not presented evidence adequate to permit a fact finder to con-

clude that he relied to his detriment on the alleged promise. Mr. Shields does not claim that, in reliance on the promise, he forwent any other more advantageous job opportunities, either before he started at Lasham Cartage or at any time throughout the duration of his employment with Local 705 employers. The only detrimental reliance alleged by Mr. Shields is his relinquishment of his seniority claim before the NLRB in 1967. In his reply brief, Mr. Shields contends that the NLRB's rejection of his seniority claim on the ground that he was promised full credit for his time with TRT was sufficient to show detrimental reliance. At oral argument, Mr. Shields recharacterized his alleged detrimental reliance as his relinquishment of whatever further actions he could have taken in pursuit of his unsuccessful NLRB seniority claim. He submitted that he elected not to pursue further his NLRB claim in reliance on the promise that he would receive full credit for his years at TRT for purposes of Local 705 pension benefits.

 We do not believe that Mr. Shields' contention is sufficient to establish detrimental reliance. There is nothing in the record before us from which a trier of fact could conclude that Mr. Shields suffered any detriment. In order to establish this element, Mr. Shields must make some showing that he gave up a meritorious claim; forgoing a meritless claim causes no detriment. Mr. Shields has presented no evidence detailing the merits of his NLRB claim, what the NLRB actually decided, if anything, or what further process he waived in reliance on Local 705's alleged promise regarding service credit for his time at TRT. Indeed, the record contains no documentation whatsoever of the alleged NLRB claim or of any decision by

---

6. We note that other cases from our circuit have employed slightly different formulations of the cause of action for "estoppel," as opposed to "promissory estoppel," in the ERISA context. *See, e.g., Coker,* 165 F.3d at 585 ("The cause of action has four elements: (1) a knowing misrepresentation; (2) made in

writing; (3) with reasonable reliance on that misrepresentation by the plaintiff; (4) to her detriment."); *Black,* 900 F.2d at 115 ("An estoppel arises when one party has made a misleading representation to another party and the other has reasonably relied to his detriment on that representation.").

the NLRB. Nor does it contain any allegation that Mr. Shields made a choice to abandon any further proceedings on the claim after the NLRB rejected his complaint. Mr. Shields' own deposition testimony, which is the only evidence in the record that the NLRB claim ever existed, is too vague to allow us to ascertain what exactly he gave up in reliance on the alleged promise or whether he suffered any detriment as a result.

Accordingly, we must affirm the district court's grant of summary judgment for the defendants on Mr. Shields' claim for promissory estoppel. Because Mr. Shields has not presented sufficient evidence of detrimental reliance, we need not review further whether he has adequately established a sufficiently definite promise or the reasonableness of his alleged reliance.[7]

## B. ERISA Claim for Deduction of Health Insurance Premiums

■ We turn now to Mr. Shields' claim that the deduction of Health Plan premiums from his monthly pension payment violates Section 206(d) of ERISA (29 U.S.C. § 1056(d)). Section 206(d)(1) provides that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1). Section 206(d)(2) provides an exception to this prohibition against assignment and alienation: "For the purposes of paragraph (1) of this subsection, there shall not be taken into account any voluntary and revocable assignment of not to exceed 10 percent of any benefit payment...." 29 U.S.C. § 1056(d)(2). The parties do not dispute that the deduction of Health Plan premiums does not fall into the exception provided for in Section 206(d)(2) because the premiums exceed 10 percent of Mr. Shields' monthly pension benefit.

In granting summary judgment for the defendants on this claim, the district court

relied instead on certain Treasury regulations promulgated pursuant to ERISA. The regulations provide that a plan participant may direct the plan to pay his benefits directly to a third party, provided that certain procedures are followed:

(e) Special rule for certain arrangements—(1) *In general.* For purposes of this section and notwithstanding paragraph (c)(1) of this section [defining "assignment" and "alienation"], an arrangement whereby a participant or beneficiary directs the plan to pay all, or any portion, of a plan benefit payment to a third party (which includes the participant's employer) will not constitute an "assignment or alienation" if—

(i) It is revocable at any time by the participant or beneficiary; and

(ii) The third party files a written acknowledgment with the plan administrator pursuant to subparagraph (2) of this paragraph.

(2) Acknowledgment requirement for third party arrangements. In accordance with paragraph (e)(1)(ii) of this section, the third party is required to file a written acknowledgment with the plan administrator. This acknowledgment must state that the third party has no enforceable right in, or to, any plan benefit payment or portion thereof (except to the extent of payments actually received pursuant to the terms of the arrangement). A blanket written acknowledgment for all participants and beneficiaries who are covered under the arrangement with the third party is sufficient. The written acknowledgment must be filed with the plan administrator no later than the later of—

(i) August 18, 1978; or

(ii) 90 days after the arrangement is entered into.

---

7. Mr. Shields also contends that the district court should have stricken two documents related to the promissory estoppel claim. His

conclusory allegations of prejudice are not supported by the record.

26 C.F.R. §§ 1.401(a)–1.413(e). The district court held that, although the written acknowledgment that the Health Plan has no enforceable right to the pension payments was not filed until after the 90–day deadline, the defendants are now substantially in compliance with the regulations and the plaintiff's grievance has therefore been remedied.

On appeal, Mr. Shields does not dispute that the defendants are now in compliance with the requirements that the automatic deduction arrangement be voluntary and revocable by the beneficiary and that the Health Plan acknowledge in writing that it has no enforceable right to the pension payments. Rather, Mr. Shields contends that the defendants achieved compliance only in response to the initiation of this lawsuit. Mr. Shields has not demonstrated any injury from the automatic deduction arrangement and in fact has expressed his intention to continue with the automatic deduction arrangement rather than elect to pay his Health Plan premiums by check. Under these circumstances, we see no reason for this claim to proceed any further.

In sum, we agree with the district court's conclusion that "the essence of the relief which plaintiff seeks is to bring defendants into line with the statutory and regulatory requirements" and that, now that the defendants have come into compliance, albeit only after being prodded by the filing of this lawsuit, the "plaintiff's grievance with respect to the automatic deduction program has been remedied." *Shields*, 1998 WL 341800, at *5. We therefore affirm the district court's grant of summary judgment for the defendants on this claim.

## C. ERISA Claim for Failure to Provide Documents

Mr. Shields seeks review of the district court's dismissal of his claim for penalties, under Section 502(c) of ERISA (29 U.S.C. § 1132(c)), against the plan administrators for their alleged failure to provide to him certain Pension Plan documents. He submits that the defendants violated 29 U.S.C. § 1024(b)(4) by failing to provide copies of the January 1989 and March 1967 versions of the Pension Plan within 30 days of his request. Section 1024(b)(4) provides: "The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4).

We agree with the district court that "outdated plan descriptions do not fall into any of the categories of documents a plan administrator must provide to plan participants" under section 1024(b)(4). *Shields v. Local 705, Int'l Bhd. of Teamsters*, No. 96 C 1928, 1996 WL 616548 (N.D.Ill.1996) (citing *Jackson v. E.J. Brach Corp.*, 937 F.Supp. 735, 739 (N.D.Ill.1996)). We therefore affirm the district court's dismissal of the plaintiff's claim for penalties.

### Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.

POSNER, Chief Judge, concurring.

I join the judgment and opinion of the court in full and without reservations, but I would go even further than my colleagues and hold that promissory estoppel can *never* be used to alter the terms of a defined-benefit plan, especially when it is a multiemployer plan.

It is an unsettled question to what extent or even whether estoppel, either equitable or promissory, is a permissible basis for claiming benefits from an ERISA plan. *Coker v. Trans World Airlines, Inc.*, 165 F.3d 579, 585 (7th Cir.1999); *City of Hope National Medical Center v. Healthplus, Inc.*, 156 F.3d 223, 230 n. 9 (1st Cir.1998); *Jensen v. SIPCO, Inc.*, 38 F.3d 945, 953

(8th Cir.1994). ERISA does not mention promissory estoppel, and its strict injunction that benefits may be paid only in accordance with the written plan (if there is one), 29 U.S.C. § 1102(a)(1); *Clair v. Harris Trust & Savings Bank*, No. 98–2334, 1999 WL 600403, at *2 (7th Cir. Aug. 10, 1999), and its specification of procedures for amending plans, § 1102(b)(3), cut against any inference that benefits can be predicated on a promise not made in the plan itself or (for reasons I explain later) the summary plan description. *Coker v. Trans World Airlines, Inc., supra*, 165 F.3d at 585; *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 58–60 (4th Cir.1992); see *Health Cost Controls of Illinois, Inc. v. Washington*, 187 F.3d 703, 711 (7th Cir. 1999). However, courts in ERISA cases retain their normal common law powers to fill gaps in the statute. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Miller v. Taylor Insulation Co.*, 39 F.3d 755, 758 (7th Cir.1994); *Kane v. Aetna Life Ins.*, 893 F.2d 1283, 1285 (11th Cir.1990). For statutes are rarely comprehensive; they are enacted against a rich background of common law principles that can be drawn on, as necessary, to put flesh on the legislative skeleton. But any common law elaborations of an incomplete statute must be consistent with the statute's language and animating policies. *Mertens v. Hewitt Associates*, 508 U.S. 248, 259, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993); *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 470–75, 62 S.Ct. 676, 86 L.Ed. 956 (1942) (Jackson, J., concurring); *Mathews v. Sears Pension Plan*, 144 F.3d 461, 465–66 (7th Cir.1998); Henry J. Friendly, "In Praise of *Erie*—and of the New Federal Common Law," 39 *N.Y.U. L.Rev.* 383, 405–22 (1964).

Consistent with these principles, this court "has recognized a form of estoppel as a matter of federal common law in at least some ERISA cases," *Coker v. Trans World Airlines, Inc., supra*, 165 F.3d at 585 (7th Cir.1999); *Principal Mutual Life Ins. Co.*

*v. Charter Barclay Hospital, Inc.*, 81 F.3d 53, 57 (7th Cir.1996); *Miller v. Taylor Insulation Co., supra*, 39 F.3d at 758; *Thomason v. Aetna Life Ins. Co.*, 9 F.3d 645 (7th Cir.1993); *Black v. TIC Investment Corp.*, 900 F.2d 112, 115 (7th Cir. 1990), but only a very narrow form that can rarely be invoked successfully, being "*expressly* limited ... to 'claims for benefits under unfunded single-employer welfare benefit plans' out of concern that a broader application of estoppel principles might pose a risk to plans that rely on actuarial soundness." *Coker v. Trans World Airlines, Inc., supra*, 165 F.3d at 585, quoting *Black v. TIC Investment Corp., supra*, 900 F.2d at 115 (emphasis added). See also *Krawczyk v. Harnischfeger Corp.*, 41 F.3d 276, 280 (7th Cir. 1994). Anything beyond that would be inconsistent with the principles set forth in the preceding paragraph concerning the appropriate scope of judicial completion of ERISA. The cases that I have just cited imply quite rightly that a claim for ERISA benefits that is based on the doctrine of promissory estoppel can never succeed in a case involving a defined-benefit plan. As does, though a little less emphatically, *Russo v. Health, Welfare & Pension Fund*, 984 F.2d 762, 767 n. 4 (7th Cir.1993), where we said that "our concerns about actuarial soundness expressed in *Black* would argue against applying estoppel to a multi-employer funded pension plan." As does the case law of the other circuits. See *Jensen v. SIPCO, Inc., supra*, 38 F.3d at 953 n. 4; *Watkins v. Westinghouse Hanford Co.*, 12 F.3d 1517, 1527–28 (9th Cir.1994); *Miller v. Coastal Corp.*, 978 F.2d 622, 624–25 (10th Cir.1992); *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1299–1300 (6th Cir.1991).

A defined-benefit plan guarantees a specified pension benefit to the plan participants when they retire, in contrast to a defined-contribution plan, which gives each participant when he retires whatever amount happens to be in his defined-contribution plan then. See, e.g., *Hughes Air-*

*craft Co. v. Jacobson,* — U.S. —, —, 119 S.Ct. 755, 761, 142 L.Ed.2d 881 (1999); *Clair v. Harris Trust & Savings Bank, supra,* 1999 WL 600403 at *1. To determine how much the employer and the employees must contribute to the plan in order to fund the benefits (that is, in order to make sure that the plan will have sufficient assets to pay benefits as they come due to retiring participants) requires complex actuarial calculations. The starting point for calculation is the terms of the plan. See *Central States, Southeast & Southwest Areas Pension Fund v. Gerber Truck Service, Inc.,* 870 F.2d 1148, 1151 (7th Cir.1989) (en banc). If terms are added by the operation of promissory estoppel that appear nowhere in the plan documents upon which the actuarial calculations are based, that the actuaries who designed the funding mechanism in the plan did not know about, and that, unlike terms appearing in a summary plan description (which is a statutorily required plan document, 29 U.S.C. § 1022(a), on which the participant is entitled to rely, *Health Cost Controls of Illinois, Inc. v. Washington, supra,* 187 F.3d at 711), do not purport merely to summarize the plan, the plan may turn out to be seriously underfunded. These considerations are decisive against allowing the invocation of promissory estoppel in any case involving a defined-benefit plan. I thus would not either require the defendant to prove, or permit the plaintiff to disprove, that honoring the promise would actually impair the actuarial soundness of the plan. I would not subject defined-benefit plans to the expense and uncertainty of litigating actuarial issues.

This conclusion is even clearer in a case such as this in which the promise is made to a number of workers, rather than just one, since the actuarial implications are graver the more workers are involved. And it is particularly clear in a case—which is also this case—in which the defined-benefit plan is a multiemployer plan. For the consequence of the underfunding may then be that an employer who had absolutely nothing to do with the promise that is the basis for working an estoppel may have to dip into his pocket to make up the shortfall. This consideration led us in *Gerber* to hold that multiemployer plans are not subject to equitable defenses that would ordinarily excuse an employer from having to contribute to a plan. 870 F.2d at 1153–55. *Gerber* nixes efforts by employers to appeal to equity to pay less than the plan requires; it stands to reason that employees should not be allowed to appeal to equity to get more than the plan allows. They should not be allowed to claim benefits that, being off-plan, may impose a financial burden on doubly innocent employers: employers who never employed *these* employees and who may have had equitable grounds that they were forbidden to invoke for paying less than the law required them to pay.

So Shields's claim fails at the threshold and it is therefore unnecessary to consider whether the promise on which he bases his suit was sufficiently definite, and induced sufficient detrimental reliance, to satisfy the elements of the doctrine of promissory estoppel, although the court is correct that it was neither. It is enough that this was a defined-benefit plan, and if *that* is not enough, that it was a promise made to a number of workers, and if more is needed (it is not) that it was a multiemployer plan.